UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
25-CR-00012 (ADM/DJF)

UNITED STATES OF AMERICA,

Plaintiff,

v.

LATASHA THOMAS,

Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and the defendant, Latasha Thomas, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota ("the United States" or "the government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count 3 of the Indictment, which charges the defendant with mail fraud, in violation of 18 U.S.C. § 1341. The defendant fully understands the nature and elements of the crime with which she has been charged.

Upon imposition of sentence, if there are remaining counts, the government agrees to move to dismiss those remaining charges against the defendant contained in the Indictment.

2. **Factual Basis**. The defendant is pleading guilty because she is in fact guilty of Count 3 of the Indictment. In pleading guilty, the defendant admits the

following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

From on or about August 2022 through on or about August 2024, Latasha Thomas participated in a conspiracy to defraud the federal Supplemental Nutrition Assistance Program ("SNAP"), as administered by the United States Department of Agriculture and the state of Minnesota. In this conspiracy, Thomas and others devised a scheme to fraudulently acquire and sell Electronic Benefit Transfer ("EBT") cards loaded with SNAP benefits.

EBT cards look and work like debit cards. Minnesotans can apply for an EBT card by submitting an application including their name, mailing address, social security number, and copy of their driver's license. If the applicant is deemed eligible, a government office in Minnesota mails a physical EBT card—labeled with the name provided in the application—to the address the application requests. EBT cards issued in this manner are automatically loaded each month with a predetermined amount of SNAP funds. EBT cardholders can then use the cards to purchase things like groceries or they can withdraw cash from the EBT account at an ATM.

To carry out her scheme, Thomas and her conspirators created fake identities. They did so by creating temporary Minnesota drivers' licenses using fake names. Thomas and her conspirators then submitted EBT applications using those fake names.

Thomas and her conspirators sought to maximize the monthly benefit allotments on each card. To do so, they created phony doctors' notes stating that the

EBT "applicants" were pregnant and confined to bedrest (and thus entitled to greater monthly benefits). Those doctor notes were fraudulent.

By submitting these false applications, Thomas and her conspirators received dozens of EBT cards. Then they used them in two ways. First, the conspirators, including Thomas, used the cards at ATMs to withdraw cash to which they were not entitled. Second, the conspirators, including Thomas, marketed and sold the use of the EBT cards to others.

In those sales, Thomas and her conspirators loaned the use of EBT cards to customers, whom they charged a rental fee. To facilitate those customer transactions and advance the scheme, Thomas provided EBT cards to those customers in exchange for their cash rental fees.

For the purpose of executing the scheme described above, Thomas knowingly caused to be delivered by mail or by any private or commercial interstate carrier certain matters and things. In or about March 2024, for example, Thomas submitted an EBT application including a phony name and thereby knowingly caused to be delivered by mail or by any private or commercial interstate carrier an EBT card bearing that name. Thomas did so with the intent to defraud.

In all, Thomas and her conspirators received more than $325,000 in federal funds loaded onto the EBT cards obtained through their scheme.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pretrial motions. As part of this plea agreement and based upon the concessions of the United States within this plea

agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pretrial motions in this case. The defendant agrees that, by pleading guilty, she is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that she has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that she has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent her. The defendant understands that she has the right to persist in a plea of not guilty and, if she does so, she would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences**. The defendant understands that as a result of her conviction, she could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public

office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with her attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6. **Statutory Penalties**. The defendant understands that Count 3 of the Indictment, charging her with mail fraud in violation of 18 U.S.C. § 1341, is a felony offense that carries the following statutory penalties:

a. a maximum of 20 years in prison;

b. a supervised release term of not more than 3 years;

c. a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

d. restitution to victims as agreed to by the parties in this agreement;

e. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guidelines calculations. The parties stipulate to the following guidelines calculations:

a. Base Offense Level. The parties agree that the base offense level is 7. U.S.S.G. § 2B1.1(a)(1).

b. Specific Offense Characteristics. The parties agree that the offense level should be increased by 12 levels because the offense involved an intended loss amount of $325,159. U.S.S.G. § 2B1.1(b)(1). The parties agree that no other specific offense characteristics apply.

c. Chapter 3 Adjustments. The parties agree that, aside from acceptance of responsibility, no Chapter 3 adjustments apply.

d. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of her intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (i) the defendant testifies truthfully during the change of plea and sentencing hearings; (ii) the defendant provides full, complete and truthful information to the United States Probation Office in the presentence investigation; and (iii) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e. Zero-Point Offender Adjustment. Because the defendant has zero criminal-history points and no disqualifying conduct, the parties agree the defendant qualifies for a 2-level reduction under U.S.S.G. § 4C1.1.

f. Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category I. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the

information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any adult or juvenile sentence that should be included within her criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on her true criminal history category, and she will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

g. Guidelines Range. If the adjusted offense level is 14, and the criminal history category is I, the Sentencing Guidelines range is **15-21 months of imprisonment**.

h. Fine Range. If the adjusted offense level is 14, the Sentencing Guidelines fine range is $7,500 to $75,000. U.S.S.G. § 5E1.2(c).

i. Supervised Release. The Sentencing Guidelines' term of at least one year but not more than three years. U.S.S.G. § 5D1.2.

8. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the

applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations and/or the defendant's criminal history category is/are different from those stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw her guilty plea.

11. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to Guideline § 5E1.3. The defendant agrees to pay the special assessment.

12. **Restitution Agreement**. The defendant is required to pay mandatory restitution to victims and in an amount to be determined by the Court. She agrees to pay the amount to the victims as determined at sentencing. She further agrees that she is obligated to pay $325,159. The defendant understands and agrees that 18 U.S.C. § 3663A applies and that the Court is required to order the defendant to make restitution to the victims of her crimes. The defendant agrees that she owes

restitution and agrees that the Court shall order her to pay restitution in the amount of $325,159 to the United States Department of Agriculture and that she will be jointly and severally liable for restitution of $325,159 with her co-defendants. The parties agree that the customers of Thomas and her conspirators, who paid rental fees to those conspirators to use the ill-begotten EBT cards, are not entitled to restitution from Thomas as a result of the offense conduct described in this agreement.

13. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of her guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

14. **Forfeiture.** The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the mail fraud charged in Count 3 of the Indictment.

The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal, or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings. To the extent the defendant has sought remission or otherwise challenged the forfeiture of any property seized for forfeiture, she withdraws any such challenges.

15. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty.

The defendant also waives the right to collaterally attack her conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both

substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

16. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

17. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with her decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's

decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

JOSEPH H. THOMPSON
Acting United States Attorney

Date: 6/25/2025

BY: Daniel W. Bobier
Assistant United States Attorney

Date: 6-25-25

Latasha Thomas
Defendant

Date: 6/25/2025

Jennifer Congdon
Counsel for Defendant