UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-12(3) (ADM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **GOVERNMENT'S INITIAL** |
| v. | ) | **SENTENCING POSITION** |
| | ) | **PLEADING** |
| 3. CYNTHIA THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America recommends the Court sentence Ms. Cynthia Thomas to a custodial term of 6 months in prison. In the government and probation's view, the applicable guidelines range of imprisonment is 8-14 months and is based on: a base offense level of 6, U.S.S.G. § 2B1.1(a)(2); a 12-level enhancement given an intended loss amount greater than $250,000 but less than $550,000, U.S.S.G. § 2B1.1(b)(1); a 2-level reduction because Thomas qualifies as a minor participant under U.S.S.G. § 3B1.2(b); a 3-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a) and (b); a further 2-level reduction as a zero-point offender, U.S.S.G. § 4C1.1(a); and a criminal history category of I, U.S.S.G. § 4A1.1.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Offense Conduct

The government concurs with the presentence report's description of the offense conduct, as further detailed in the plea agreement and colloquy. PSR, Dkt. 81; Plea Agreement, Dkt. 64 ¶ 2.

Over the course of two years, Cynthia Thomas conspired with family, Latasha and Ambrosia Thomas, to defraud the federal Supplemental Nutrition Assistance Program. Their scheme focused on the unlawful acquisition of Electronic Benefit Transfer cards, which are issued by the state government to qualifying applicants and loaded monthly with money from SNAP. Legitimate applicants can use their EBT cards to purchase groceries and make ATM withdrawals. Thomas and her conspirators, however, were not legitimate applicants. Plea Agreement ¶ 2. Instead, the Thomases devised a scheme to acquire cards under false pretenses and rip off the program. The Thomases put their scheme to effect in several steps.

First, the Thomases created fake Minnesota temporary drivers' licenses using fake names. The Thomases did so brazenly, deploying obviously phony names like "Katrina Fart" and "Peanut White." Each of those fake licenses pictured one of the Thomases. In one, Cynthia Thomas is pictured next to the fake name "Sofia Gold." *See id*.

Second, the Thomases submitted their bogus licenses to Hennepin County in applications for EBT cards. They submitted those applications online, from a New Hope apartment shared by Latasha and Ambrosia. Believing their SNAP allotments could be increased if they were confined to bedrest, the Thomases repeatedly claimed in their fraudulent applications to be women experiencing "high risk pregnancy." They bolstered these claims with fake doctor's notes they manufactured for the purpose of maximizing their theft of government funds. *See id*.



Third, the Thomases arranged to receive the cards for which they applied. In many of the scheme's fraudulent applications, the Thomases directed the state to send the EBT cards to Cynthia Thomas's apartment in Roseville. Cynthia lived there under the same false name—Sofia Gold—that appears on one of the scheme's ill-begotten cards. When law enforcement searched Cynthia's apartment in Roseville, they encountered her there and found several pieces of mail addressed to pseudonyms used in the scheme. In the inside part of the apartment building's mailbox—accessible only to building management and mail carriers—law enforcement found notes indicating that mail should be delivered to Cynthia's apartment for several of the pseudonyms used in the scheme. PSR ¶¶ 15-16.

Next, the Thomases profited. They withdrew government funds from ATMs and used them to make purchases. The government collected the ATM footage for a subset of the withdrawals made using the scheme's EBT cards. In just that subset, each of the Thomases is pictured making withdrawals, Cynthia once. *Id*. ¶ 13.

 



*Images from ATM Footage Showing Withdrawals Using Ill-Begotten Cards*
*(Latasha (top left), Ambrosia (top right), Cynthia (bottom))*

Finally, the Thomases—particularly, Latasha and Ambrosia—also marketed and sold the use of the EBTs to others. The investigation uncovered repeated

4

instances of Latasha and Ambrosia arranging for their customers to pick up an EBT card, use an agreed-upon portion of its monthly allotment, return the card, and then pay the conspirators a fee (usually 50-60%) for the privilege. *See id.* ¶ 14.

In all, through their scheme the Thomases caused over $325,000 in losses to the SNAP program. *Id.* ¶ 17.

## II.    Procedural History

On January 14, 2025, the U.S. Attorney's Office charged Cynthia Thomas via indictment with one count of wire fraud conspiracy in violation of 18 U.S.C. § 371 and § 1343. Dkt. 1.

Thomas pleaded guilty to that count on June 25. Dkt. 62. The parties agree[1] that: the base offense level is 6, U.S.S.G. § 2B1.1(a)(2); a 12-level enhancement applies given an intended loss amount greater than $250,000 but less than $550,000, U.S.S.G. § 2B1.1(b)(1); Thomas qualifies as a zero-point offender and accordingly for a further 2-level reduction, U.S.S.G. § 4C1.1(a); and Thomas falls within criminal history category I, U.S.S.G. § 4A1.1. The parties also agree that Thomas was at least a minor participant (and so entitled to a 2-level reduction) under U.S.S.G. § 3B1.2(b), but the defense may argue that she qualifies as a minimal participant (and so is entitled to a 4-level reduction instead). The plea agreement recognizes that, by

---

[1] During the presentence investigation, the parties realized that the base offense level identified in Cynthia's plea agreement was mistaken: it should be 6, not 7. The parties agreed to proceed with the PSI process and sentencing with a base offense level of 6 and with all other aspects of the plea agreement unmodified.

function of the guidelines, if the Court applies the minimal-participant reduction, Cynthia will be entitled only to a 2-level reduction for acceptance.

At bottom, in the government and probation's view, the guidelines range for Cynthia Thomas is 8-14 months, resulting from an adjusted offense level of 11 and a CH category of I. In the defense's view, the range is 6-12 months, resulting from an adjusted offense level of 10. Both parties are free to recommend whatever sentence each deems appropriate.

## THE APPROPRIATE SENTENCE

The government submits that a sentence of 6 months is appropriate. Cynthia Thomas joined and participated in a successful scheme to steal taxpayer dollars from a program intended to help those who otherwise cannot feed themselves and their families. The Thomases maximized their theft by claiming not merely to be in need, but pregnant women at risk of losing their children. Their suffering was a farce. The Thomases and the fake beneficiaries they invented are not victims of fortune; rather the U.S. taxpayers are victims of the Thomases' conspiracy.

The government recognizes, however, that in this scheme Cynthia Thomas played the smallest role. It was an important role nonetheless—for the reasons discussed below—yet she is the least culpable of the three Thomases in this offense. The government submits that some carceral sentence is warranted here to promote just respect for the law and be commensurate with the seriousness of the offense but, recognizing Cynthia's relatively minor role and her lack of a criminal history, the government recommends 6 months.

## I.    Legal Standard

*Gall v. United States,* 552 U.S. 38, 49-50 (2007), sets forth the Court's sentencing methodology: the Court calculates the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence. *See United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall*, 552 U.S. at 49. "[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006). In addition, a district court must assess the other applicable sentencing factors under Section 3553(a). Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. 18 U.S.C. § 3553(a).

## II.    Evaluation of § 3553(a) Factors

The most relevant § 3553(a) factors in this case are the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense and to promote respect for the law. Here, the weight of

7

these factors is best illustrated through consideration of the ways that Cynthia Thomas's role in this conspiracy was important and the ways that it was limited.

First, Cynthia Thomas played an important role in the conspiracy. She helped conceal it. The core of the misconduct occurred at Latasha and Ambrosia's apartment in New Hope, where the conspirators ginned up fake, typically pregnant women and then submitted EBT applications in their names. Cynthia helped diffuse the conspiracy by expanding it. Her apartment in Roseville became the delivery address for the conspiracy's EBT cards (at least 67 of them), thereby insulating one part of the scheme from another. And Cynthia leased her Roseville apartment under a pseudonym using a fake ID. So while this scheme was a conspiracy of Thomases, thanks to Cynthia's participation, the surname "Thomas" did not appear on any of the paperwork in Roseville.

Second, while Cynthia's role was important, it was more limited than that of her conspirators. She did participate at multiple levels in the scheme: in the creation of fake IDs, the serial receipt of fraudulently obtained cards, and (on at least one occasioned) the conversion of the scheme's EBT benefits to cash. But it was her conspirators, Latasha and Ambrosia, who appear to have invented most of the fake identities. And it was Latasha and Ambrosia who cooperators reported having met for cash-and-card handoffs.

## CONCLUSION

The nature of this conspiracy is galling. The Thomases joined together for the purpose of ripping off a program meant to provide help to those who need it most. The

government submits some carceral sentence is accordingly called for to reflect the seriousness of the offense and to promote just respect for the law. At the same time, while Cynthia Thomas played an important role, the fact that it was also limited makes her offense less serious than her conspirators'. Accounting for that distinction and for Cynthia's lack of a criminal record, the government submits that a sentence of 6 months—a slight variance from the guidelines range—is sufficient but not greater than necessary to achieve the goals of the sentencing statute.

Dated:  November 26, 2025                    Respectfully submitted,

                                             DANIEL N. ROSEN
                                             United States Attorney

                                              */s/ Daniel W. Bobier*
                                   BY:   DANIEL W. BOBIER
                                         Assistant U.S. Attorney